United States District Court
Southern District of Texas
**ENTERED**
November 13, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DESIRE MEBA, individually and on behalf of similarly situated individuals, Plaintiff, | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:19-02740 |
| SONIC OF TEXAS, INC., *et al.*, Defendants. | § § § | |

## MEMORANDUM AND ORDER

Before the Court in this Fair Labor Standards Act ("FLSA") overtime case is

Plaintiffs Desire Meba's, Ibrahim Brian Adams's, and Arnaud Stephane Kaya

Bikindou's ("Plaintiffs'") Motion for Conditional Certification [Doc. # 54]

("Motion").  Two groups of Defendants, Gulfgate Dodge Inc. d/b/a Gulfgate Dodge

Chrysler Jeep Inc., James Davis, and Allen Johnson ("the Gulfgate Defendants") and

Sonic of Texas, Inc., Sonic–LS Chevrolet, LP, Sonic Houston JLR LP, and Sonic

Momentum VWA, L.P. ("the Sonic Defendants"), have responded.[1]  Plaintiffs have

---

[1]     Defendants Gulfgate Dodge Inc. d/b/a Gulfgate Dodge Chrysler Jeep Inc., James Davis, and Allen Johnson's Response in Opposition to Plaintiffs' Motion for Conditional Certification [Doc. # 55] (the "Gulfgate Response"); Defendants Sonic of Texas, Inc., Sonic – LS Chevrolet, LLC, Sonic Houston JLR, LLC, and Sonic Momentum VWA, LLC's Response in Opposition to Plaintiffs' Amended Motion for Conditional Certification [Doc. # 56] (the "Sonic Response").

not filed a reply, and the time for them to do so has elapsed.[2]  Based on the parties'
briefing, pertinent matters of record, and relevant legal authority, the Court **grants
in part** Plaintiffs' Motion.

## I.      BACKGROUND

A complete summary of this case's factual background can be found in the
Court's June 12, 2020 Memorandum and Order [Doc. # 47].

Plaintiffs represent a putative class of porters, valets, car washers, detailers,
and shuttle drivers who were employed by Rascoa, LLC ("Rascoa") and worked at
various car dealerships in the Houston area (the "Putative Class Members").[3]
Rascoa contracted with Sonic Automotive, Inc. ("Sonic Automotive"), a parent
company of several car dealerships, and Gulfgate Dodge Inc. ("Gulfgate Dodge") to
provide services at those dealerships.[4]

Putative Class Members were issued uniforms and/or badges containing the
logo of the dealership to which they were assigned.[5]  Plaintiffs claim that Rascoa,

---

[2]      S.D. TEX. LOC. R. 7.4.

[3]      Plaintiffs' Third Amended Complaint [Doc. # 48] ("TAC"), at 1, 7-8.   The
paragraph numbering in Plaintiffs' TAC restarts on page 15.  For the sake of clarity,
the Court cites to the relevant pages of the TAC, rather than specific paragraphs.

[4]      *Id.* at 5-7, 56.

[5]      *Id.* at 16-17; Affidavit of Desire Meba [Doc. # 30-8] ("Meba Aff."), ¶¶ 5, 28,47, 64;
Affidavit of Ibrahim Bryan Adams [Doc. # 30-9] ("Adams Aff."), ¶¶ 4, 8, 24, 49.

the dealerships, and their managers were joint employers of the Putative Class Members with joint authority to hire and fire Putative Class Members, joint supervisory control over Putative Class Members' work schedules and conditions of employment, joint control over the rates and method of payment, and joint control over employment records.[6]

Rascoa issued invoices to the other Defendants for Putative Class Members' work.[7]  Plaintiffs have presented evidence that Defendants reviewed the invoices, which reflected on their face that Putative Class Members routinely worked more than 40 hours per week but were not paid overtime.  Defendants nevertheless issued payment to Rascoa in the amounts invoiced.[8]

Plaintiffs and Putative Class Members present evidence that they were paid in cash, did not receive pay stubs, and were not paid overtime or minimum wage.[9]

---

[6]   TAC at 6, 16-17; Meba Aff. ¶¶ 18-24, 30-32, 41-42, 59-60, 79; Adams Aff. ¶¶ 10, 20, 25, 51-52, 61.

[7]   *Id.* at 8-9; Invoices from Rascoa to Gulfgate [Doc. # 30-7]; Invoices from Rascoa to Lone Star Chevrolet [Doc. # 30-10]; Invoices from Rascoa to Sonic Houston JLR, LLC [Doc. # 30-11].

[8]   *Id.*; *see also* Payments from Sonic Automotive to Rascoa [Doc. # 30-12].

[9]   TAC at 7, 57-58; Meba Aff. ¶¶ 13-14, 36-37, 54-55, 73-74; Adams Aff. ¶¶ 14-15, 29-30, 39-40, 56-57, 65.

P:\ORDERS\11-2019\2740ConditionalCertification.docx  201112.1146

Plaintiffs claim the Defendant dealerships kept records of Putative Class Members'

working hours and pay, and were aware of these FLSA violations.[10]

Desire Meba filed this collective action suit against the dealerships and their

managers on July 25, 2019 for failure to pay overtime and failure to pay minimum

wage in violation of the FLSA.[11]   Meba filed a First Amended Complaint on

October 21, 2019, adding Rascoa and its officer, Seddik Belmamoun, as

defendants.[12]  On May 1, 2020, Meba moved for conditional certification of the class

defined in the First Amended Complaint.[13]  On May 11, 2020, Meba sought leave to

file a Second Amended Complaint, which the Court granted.[14]  Plaintiffs filed their

---

[10]     TAC at 16-17, 22, 25, 28, 54, 59-60; 14-15; Meba Aff. ¶¶ 9-10, 33-34, 51-52, 69-70; Adams Aff. ¶¶ 12-13, 27-28, 54-55.

[11]     Plaintiff's Original Complaint [Doc. # 1].

[12]     Plaintiff's First Amended Complaint [Doc. # 9].

[13]     Plaintiffs have incorporated into their Motion the arguments and authorities in their earlier motion to certify the class defined in their First Amended Complaint.  Motion at 2.

[14]     Motion for Leave to File a Second Amended Complaint [Doc. # 36].  Plaintiffs sought to add claims for violations of state law and FLSA recordkeeping requirements, named Ibrahim Brian Adams and Stephane Kaya as new plaintiffs, and named Sonic Automotive as a new defendant.  The Court granted Meba's motion in part and ordered him to file a third amended complaint adding Ibrahim Brian Adams and Stephane Kaya as plaintiffs and Sonic Automotive as a defendant. June 12, 2020 Memorandum and Order [Doc. # 47].  The Court found Meba's proposed additional claims for violations of state law and FLSA recordkeeping requirements were futile and denied Meba's request for leave to add those claims. *See id.*

4

Third Amended Complaint on July 3, 2020.  The Third Amended Complaint adds Ibrahim Brian Adams and Stephane Kaya as Plaintiffs and Sonic Automotive as well as 13 other Sonic entities as Defendants.[15]

Plaintiffs now seek conditional certification of this case as a collective action. Plaintiffs request that the Court conditionally certify a putative class of:

> Any individuals employed and/or paid by Rascoa, LLC, Seddik Belmamoun, or any entity owned or controlled by Seddik Belmamoun who were assigned by Rascoa, LLC, Seddik Belmamoun, any entity owned or controlled by Seddik Belmamoun, and/or any employees of Seddik Belmamoun to perform work at: any dealership pursuant to the Supply/Service Agreement between Sonic Automotive, Inc. and Rascoa, LLC after July 25, 2016, or at Gulfgate Dodge, Inc. after July 25, 2016.[16]

## II.   **LEGAL STANDARD**

Section 216(b) of the FLSA provides a private right of action for employees against employers who violate the Act.  Similarly situated employees may "opt-in" to a suit under § 207(a) and proceed as a collective.  "Courts recognize two methods for determining whether to certify a collective action on a conditional basis or

---

[15]    *Id.*  The Sonic entities added as Defendants in the TAC are: Sonic Automotive, Inc.; Sonic Automotive 4701 I-10 East, TX, LLC; Sonic Automotive of Texas, LLC; Sonic Momentum B, LLC; Sonic – Clear Lake Volkswagen, LLC; Sonic – Jersey Village Volkswagen, LLC; Sonic Automotive – 3401 N. Main, TX, LLC; Philpott Motors, LTD.; Sonic Momentum JVP, LLC; Sonic Houston LR, LLC; Sonic – Houston V, LLC; Sonic Advantage PA, LLC, Sonic LS, LLC; and Sonic Automotive of Nevada, Inc.

[16]    Motion at 3 (the "Putative Class Members").

authorize notice to similarly situated employees: the spurious class action *Shushan* approach, or the two-step *Lusardi* approach." *Hernandez v. Helix Energy Solutions Grp., Inc.*, No. H-18-1588, 2018 WL 6067293, at *2 (S.D. Tex. Nov. 20, 2018) (Rosenthal, J.).   The Fifth Circuit has not determined which method is more appropriate, but district courts in the Fifth Circuit "have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA." *Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007); *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (noting that neither method has been formally adopted); *Sandoz v. Cingular Wireless*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) (observing that most cases proceed using the two-step *Lusardi* approach).

"The first step of the *Lusardi* analysis, the notice stage, requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit." *Hernandez*, 2018 WL 6067293, at *2.   In this first step, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.   Because the court has minimal evidence, this conditional certification determination is usually made using

6

a fairly lenient standard.  If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in.  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003).  Courts do not review the underlying merits of the action at the notice stage.  *See McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010).  "[T]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court."  *Shaw v. Jaguar Hydrostatic Testing, LLC*, No. 2:15-CV-363, 2017 WL 3866424, at *3 (S.D. Tex. Sept. 5, 2017).[17]

Although motions for conditional certification are subject to a "fairly lenient standard," *Mooney*, 54 F.3d at 1214, the court may deny a motion for conditional certification if the action arises from "circumstances that are personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).  A court may modify

---

[17]    The second, more searching stage of the *Lusardi* analysis is typically precipitated by a motion for decertification by defendants.  "If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice."  *Mooney*, 54 F.3d 1207 at 1214. Only at the decertification stage do district courts look to the underlying merits of the action. *See Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013).

a plaintiff's proposed FLSA collective action class definition if the "proposed class action definition does not encompass only 'similarly situated' employees." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (citing *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005)).

## III.   <u>DISCUSSION</u>

Plaintiffs request that the Court conditionally certify a collective action of Putative Class Members and approve the sending of notice to the class.  The Court first considers Plaintiffs' request to conditionally certify a class of Putative Class Members.

### A.   <u>Conditional Certification</u>

Plaintiffs argue that conditional certification is proper because they have shown that (1) other aggrieved individuals exist, (2) those individuals are similarly situated to Plaintiffs in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to this suit.  Defendants argue that conditional certification is not appropriate because Plaintiffs cannot show that Putative Class Members were victims of a single policy or plan that violated the law or that Putative

Class Members are similarly situated.[18]   The Sonic Defendants also argue that Plaintiffs have not shown that other individuals want to opt in to this lawsuit.[19]

### 1.   Whether Other "Aggrieved Individuals" Exist

To satisfy the first element of the conditional collective action certification test, Plaintiffs must show that "it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan."

---

[18]   Sonic Response at 7-8; Gulfgate Response at 5-8.  Defendants also raise various jurisdictional and standing arguments.  Sonic Response at 13-16; Gulfgate Response at 6-8.  Defendants' standing and jurisdiction arguments do not affect whether conditional certification is appropriate.  Plaintiffs' proposed class definition is limited to individuals employed by Rascoa, Seddik Belmamoun, or entities they controlled.  Plaintiffs' standing is not disputed as to these Defendants, and any future dismissal of other Defendants will not change the pool of individuals eligible to opt in to this collective action.

Furthermore, all of the cases cited by Defendants in support of these arguments involved motions to dismiss or for summary judgment.  Plaintiffs' Motion for Conditional Certification is not the appropriate procedural vehicle to raise these issues.  *See Whittenberg v. Centene Co. of Tex., L.P.*, No. 20-CV-00353-DAE, 2020 WL 3578317, at *5 (W.D. Tex. July 1, 2020) ("Defendants' response to Plaintiffs' motion for certification raises a number of additional arguments and issues, such as personal jurisdiction and standing.  The Court need not address these arguments in the context of Plaintiffs' certification motion, which is not the appropriate procedural vehicle to raise these issues.").  Defendants must file appropriate Rule 12 motions if they wish to pursue these issues.  *See, e.g., Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1127-29 (N.D. Ill. 2017) (granting in part plaintiff's motion for conditional certification and granting defendants' partial motion to dismiss a defendant for lack of standing); *Heuberger v. Smith*, No. 3:16-CV-386-JD-JEM, 2017 WL 3923271, at *15 (N.D. Ind. Sep. 7, 2017) (same).

[19]   Sonic Response at 13-15.

*Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012); *see also Macias v. Catapult Painting, LLC*, No. H-19-4856, 2020 WL 6253589, at *3 (S.D. Tex. Oct. 22, 2020) (Rosenthal, J.).

Plaintiffs argue that Putative Class Members were victims of a common policy or practice because they all worked for Rascoa and performed similar work at car dealerships pursuant to agreements between Rascoa and Defendants.  Under the agreement between Rascoa and Sonic Automotive (the "Sonic Master Agreement"), Sonic Automotive paid Rascoa a flat rate for identified services and an hourly rate for other services rendered by Putative Class Members.[20]  For example, Rascoa charged Sonic Automotive $70 for each full-service detail performed by Putative Class Members and $11.95 for each hour Putative Class Members worked as valets.[21]  The pricing schedule in the Sonic Master Agreement explicitly stated that it did not provide for overtime.[22]  The Sonic Master Agreement gave individual dealerships the ability to control Putative Class Members' schedules and select the type of work they would perform from a menu of services and associated prices.[23]

---

[20]   *See* Supply/Service Agreement between Sonic Automotive and Rascoa LLC [Doc. # 48-6] (the "Sonic Master Agreement"), at 10.

[21]   Sonic Master Agreement at 10.

[22]   *Id.*

[23]   *Id.* ¶¶ 1-2.

10

Defendants scheduled Putative Class Members to work more than 40 hours per week and approved invoices reflecting that Putative Class Members worked more than 40 hours per week without being paid overtime.[24]

Plaintiffs have not produced any agreement between Rascoa and the Gulfgate Defendants. However, Plaintiff Desire Meba, who worked at several Sonic dealerships and at Gulfgate Dodge, submitted an affidavit showing that his employment conditions at Gulfgate Dodge were nearly identical to those at the Sonic dealerships.[25] Meba was assigned to Gulfgate Dodge by the same individual who assigned him to Sonic dealerships.[26] While assigned to Gulfgate Dodge, Meba worked for Rascoa, the same company he worked for while assigned to Sonic dealerships.[27] While working at Gulfgate Dodge, Meba had the same job title (Porter/Valet), had the same job duties (driving, parking, fueling, valeting, and washing vehicles), worked approximately the same schedule (60 hours per week), and was paid the same way (an envelope of cash) as at Sonic dealerships.[28] Plaintiffs

---

[24]    *See* Meba Aff. ¶¶ 10-14, 34-37, 52-54, 70-74; Adams Aff. ¶¶ 13-15, 28-30, 38-40, 55-57, 64-65; Invoices from Rascoa to Lone Star Chevrolet [Doc. # 30-10]; Invoices from Rascoa to Sonic Houston JLR, LLC [Doc. # 30-11].

[25]    Meba Aff. ¶¶ 45-61.

[26]    *Id.* ¶ 45.

[27]    *Id.* ¶¶ 45-61.

[28]    *Id.* ¶¶ 46, 52, 54.

have also submitted invoices from Rascoa to Gulfgate Dodge showing Putative Class Members regularly worked more than 40 hours per week at Gulfgate Dodge but that Gulfgate Dodge did not pay for their overtime.[29]   This evidence indicates that the agreement between Gulfgate Dodge and Rascoa was similar in relevant respects to the Sonic Master Agreement.   The Court finds that Plaintiffs have presented ample evidence supporting a reasonable inference that "there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Heeg*, 907 F. Supp. 2d at 862.

Defendants also argue that Plaintiffs cannot show they were subject to an illegal common policy because the agreements between Rascoa Defendants were not unlawful.[30]   Defendants claim that a similar theory was rejected in *Xavier v. Belfour USA Group*, 585 F. Supp. 2d 873 (E.D. La. 2008), where the District Court found that a company's use of subcontractors to supply labor was not a "a single [defendant] decision, policy or plan that violated the law." *Id.* at 878.   *Xavier* is distinguishable for several reasons.   First, important to the court's finding in that case was the fact that plaintiffs "submit[ted] no evidence demonstrating that [defendant] controlled the work of the laborers such that it can be held to be the

---

[29]     Invoices from Rascoa to Gulfgate Dodge [Doc. # 30-7].

[30]     Gulfgate Response at 4; Sonic Response at 6.

direct employer of the named plaintiffs or the potential opt-in plaintiffs." *Id.* at 879. In contrast, Plaintiffs in the case at bar have submitted evidence showing that Defendants controlled the work of Putative Class Members and were Putative Class Members' joint employers.[31]  The *Xavier* court also found that the plaintiffs in that case had not shown the existence of a common policy or practice because the proposed class members worked for 2,100 subcontractors at different job sites in at least 42 states.  *Id.* at 880.  Here, in contrast, Plaintiffs and Putative Class Members worked for a single contractor at a handful of work sites in Texas.  Plaintiffs have met their burden to show that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan by Defendants.

### 2.     Whether Putative Class Members Are Similarly Situated

Potential class members are considered similarly situated to the named plaintiff if they are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (citing *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)).  "The 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and

---

[31]     Meba Aff. ¶¶ 18-24, 30-32, 41-42, 59-60, 79; Adams Aff. ¶¶ 10, 20, 25, 51-52, 61; *see also* June 12, 2020 Memorandum and Order at 7-8 (finding that Defendants were joint employers with respect to Meba).

Rule 42 (severance), so a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Macias*, 2020 WL 6253589, at *3 (cleaned up) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)). "Though the positions must be similar, they need not be identical. However, if the job duties among the putative class members vary significantly, class certification should be denied." *Avila v. SLSCO, Ltd.*, No. 3:18-cv-00426, 2020 WL 1891691, at *3 (S.D. Tex. Feb. 10, 2020) (citing *Heeg*, 907 F. Supp. 2d at 862). "Geographic commonality is not necessary to meet the 'similarly situated' requirement for an FLSA collective action; instead the focus is on whether the employees were impacted by a common policy." *Vargas v. Richardson Trident Co.*, Civ. No. H–09–1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010).

Defendants argue that Putative Class Members are not similarly situated for essentially the same reasons they claim Putative Class Members are not victims of a common policy or practice. Defendants claim that Putative Class Members are not similarly situated because they worked for different dealerships at different locations and performed different duties.[32]

---

[32] Sonic Response at 2; Gulfgate Response at 5.

The Court concludes that Plaintiffs have made a preliminary showing that Putative Class Members are similarly situated.  Plaintiffs have shown that Putative Class Members had the same basic job requirements and were subject to the same unlawful policy or plan regardless of the dealerships they worked at.[33]  As a result, Plaintiffs have demonstrated that they are similarly situated to Putative Class Members.[34]  No more is required at this preliminary stage.

### 3.    Whether Similarly Situated Individuals Want to Opt In

Several courts have held that plaintiffs seeking conditional certification need not present evidence that other class members are interested in joining the suit.[35]

---

[33]    Meba Aff. ¶¶ 10-14, 34-37, 52-54, 70-74; Adams Aff. ¶¶ 13-15, 28-30, 38-40, 55-57, 64-65; *see also* Invoices from Rascoa to Gulfgate [Doc. # 30-7] (showing Putative Class Members were not paid overtime); Invoices from Rascoa to Lone Star Chevrolet [Doc. # 30-10] (same); Invoices from Rascoa to Sonic Houston JLR, LLC [Doc. # 30-11] (same).

[34]    *See, e.g.*, *Martinez v. Mobilelink*, No. 4:20-CV-1149, 2020 WL 6075639, at *4 (S. D. Tex. Oct. 15, 2020) (conditionally certifying class of assistant managers at 12 different locations across six states where plaintiffs presented uncontroverted evidence of a company-wide illegal policy and "plaintiffs' shared job titles and the similar tasks that they purportedly performed establish a sufficient factual nexus to bind them together."); *Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711, 720 (E.D. La. 2015) ("Plaintiffs need not be identically situated, and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities."); *Ryan*, 497 F. Supp. 2d at 825 (conditionally certifying company-wide class where "[t]he affidavits of the plaintiffs establish[ed] that the potential class members had (or have) the same job requirements and pay provisions as the named plaintiffs.").

[35]    *See, e.g.*, *Argo v. Precision Drilling Co., LP*, No. 4:15-CV-00604, 2015 WL 9319233, at *1 (S.D. Tex. Dec. 23, 2015); *Jones v. Cretic Energy Servs., LLC*, No.

These courts reason that requiring a plaintiff to demonstrate that others wish to join a lawsuit before notice is issued "creates a 'chicken and egg' problem," *Gibson*, 2011 WL 2837506, at *7, and is "at odds with the Supreme Court's command that the FLSA be liberally construed . . . ." *Dreyer*, 2008 WL 5204149, at *3. Courts that do require a plaintiff to present some evidence that other employees wish to opt in find that this requirement is "easily satisfied if there is some evidence that others are likely to want to join the litigation." *Pierce v. Apache Corp.*, No. H-18-1803, 2019 WL 338129, at *4 (S.D. Tex. Jan. 28, 2019). However, those courts "require more than a plaintiff's self-serving conclusory affidavit that fails to identify specific individuals that would want to join the suit." *Id*

The Court need not decide at this time whether a plaintiff must present some evidence that other employees wish to opt in in order to conditionally certify an FLSA collective action. Assuming this requirement does apply, Plaintiffs have met it. Plaintiffs Desire Meba and Ibrahim Adams state in their affidavits that they are aware of Putative Class Members that they believe would join a collective action.[36] Additionally, two Putative Class Members have already filed consents to join this

---

H-15-0051, 2015 WL 8489978, at *4 (S.D. Tex. Dec. 9, 2015); *Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506, at *7 (S.D. Tex. July 18, 2011); *Dreyer v. Baker Hughes Oilfield Operators, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008).

[36]     Meba Aff. ¶¶ 17, 40, 58, 78; Adams Aff. ¶ 18, 34, 43, 60, 67.

collective action even though notice has not been issued.[37]  The Court concludes that Plaintiffs have met the "lenient standard" for conditional certification.  *Mooney*, 54 F.3d at 1214.

### B.   Notice

Plaintiffs request that the Court allow them to send the proposed notice form attached to their Motion to Putative Class Members.[38]  Plaintiffs also request that the Court grant them "additional time to locate and identify putative class members."[39]  Defendants have not directly responded to Plaintiffs' proposed notice form or to Plaintiffs' request for additional time to locate and identify Putative Class Members.

Plaintiffs and Defendants shall promptly confer in good faith to negotiate the form and content of proposed notices to Putative Class Members.  Plaintiffs and Defendants shall also confer regarding what, if any, discovery is appropriate so that Plaintiffs may identify and contact Putative Class Members.  Plaintiffs and Defendants shall file within 14 days of entry of this Memorandum and Order a status report including any agreed proposed notice forms, any agreements regarding

---

[37]     Consent to Join Collective Action by Zoe Ndomba [Doc. # 57]; Consent to Join Collective Action by Marthin Ngouem [Doc. # 57-1].

[38]     *See* Proposed Notice [Doc. # 54-1].

[39]     Motion at 12.

discovery of Putative Class Members' identities and contact information, a proposed schedule for notice-related discovery and the sending of notice, and the parties' positions as to any notice-related disagreements.

## IV.   **CONCLUSION**

Plaintiffs have met their lenient burden to show that conditional certification is appropriate.  Defendants' arguments regarding standing and jurisdiction are not appropriately considered in the context of Plaintiffs' Motion for Conditional Certification and do not affect the scope of Plaintiffs' proposed class.  It is therefore

**ORDERED** that Plaintiffs' Motion for Conditional Certification [Doc. # 54] is **GRANTED in part**.  The Court conditionally certifies a collective action class of:

> Any individuals employed and/or paid by Rascoa, LLC, Seddik Belmamoun, or any entity owned or controlled by Seddik Belmamoun who were assigned by Rascoa, LLC, Seddik Belmamoun, any entity owned or controlled by Seddik Belmamoun, and/or any employees of Seddik Belmamoun to perform work at: any dealership pursuant to the Supply/Service Agreement between Sonic Automotive, Inc. and Rascoa, LLC after July 25, 2016, or at Gulfgate Dodge, Inc. after July 25, 2016.

Plaintiffs' Motion for Conditional Certification [Doc. # 54] is **otherwise DENIED**. It is further

**ORDERED** that the parties must confer promptly in good faith to negotiate the form and schedule of proposed notice(s) to Putative Class Members and the scope and timing of notice-related discovery, if any.  It is further

**ORDERED** that the parties must file **within fourteen (14) days** of this Order a joint status report: (1) attaching copies of agreed proposed notices to Putative Class Members, with redlined versions reflecting any disagreements; (2) addressing a schedule regarding notice-related discovery; and (3) specifying a proposed schedule for sending notice to the Putative Class Members.

**SIGNED** at Houston, Texas, this **13th** day of **November, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

19